## Alexandria

JAMES VERROCCHIO, JR.

v.

GENEVA J. VERROCCHIO

No. 2199-91-4

Decided April 27, 1993

COUNSEL

J. Michael Sharman, for appellant.

No brief or argument for appellee.

OPINION

**FITZPATRICK, J.**—James Verrocchio, Jr., husband, appeals an award of guardian *ad litem* fees incurred pursuant to a custody hearing that was part of a pending divorce suit in the Circuit Court of Culpeper County. He argues that the circuit court has no authority to appoint or to order payment for a guardian *ad litem* to protect the interests of a child, when custody of that child is litigated incident to a divorce proceeding. We disagree and affirm the trial court.

The facts of this case are not in dispute. On March 28, 1991, the trial judge, *sua sponte*, found that the infant son of the parties was in need of a guardian *ad litem* to protect his interests in the pending custody hearing. Accordingly, the trial judge appointed Billie Lee Dunford-Jackson as the guardian *ad litem* for the child. Upon completion of her service to the circuit court, Ms. Dunford-Jackson submitted a bill for her fees and expenses. The trial judge, after reducing the amount requested, directed the parties to pay the bill. Husband was ordered to pay eighty percent of the $1,788.50 fees and costs due Ms. Dunford-Jackson.

█ Husband argues that there is no authority for a circuit court to appoint a guardian *ad litem* except in those instances when the person under a disability is a party defendant as set forth in Code § 8.01-9.[1] This issue presents a matter of first impression in Virginia. Although no statute expressly prohibits, permits, or requires a circuit court to appoint a guardian *ad litem* for a child involved in a contested custody

---

[1] Code § 8.01-9(A) provides:

A. A suit wherein a person under a disability is a party defendant shall not be stayed because of such disability, but the court in which the suit is pending, or the clerk thereof, shall appoint some discreet and competent attorney-at-law as guardian ad litem to such defendant, whether such defendant shall have been served with process or not; or, if no such attorney be found willing to act, the court shall appoint some other discreet and proper person as guardian ad litem. Any guardian ad litem so appointed shall not be liable for costs. Every guardian ad litem shall faithfully represent the estate or other interest of the person under a disability for whom he is appointed, and it shall be the duty of the court to see that the interest of such defendant is so represented and protected. And the court, whenever of opinion that the interest of such person requires it, shall remove any guardian ad litem and appoint another in his stead. When, in any case, the court is satisfied that the guardian ad litem has rendered substantial service in representing the interest of the person under a disability, it may allow such guardian reasonable compensation therefor, and his actual expenses, if any, to be paid out of the estate of such person; provided, if such estate is inadequate for the purpose of paying such compensation and expenses, all, or any part thereof, may be taxed as costs in the proceeding.

dispute, Virginia courts have frequently done so. *See, e.g., Kern v. Lindsey*, 182 Va. 775, 779-80, 30 S.E.2d 707, 708 (1944) (trial court appointed a guardian *ad litem* for child and ordered the "husband appellee to pay the cost of the proceeding . . . including a fee of $245 to the guardian *ad litem*"); *Alexander v. Alexander*, 12 Va. App. 691, 693, 406 S.E.2d 666, 667 (1991) (guardian *ad litem* made recommendations in change of custody hearing in circuit court).

██ The established practice is that a guardian *ad litem* may be appointed after a trial judge makes a preliminary finding that the best interests of the child require such appointment. This practice is necessitated by the reality that the interests of a parent in a volatile custody dispute are not always consistent with those of the child. As the Supreme Court of the United States pointed out:

> Unfortunately, experience has shown that the question of custody, so vital to a child's happiness and well-being, frequently cannot be left to the discretion of parents. This is particularly true where, as here, the estrangement of husband and wife beclouds parental judgment with emotion and prejudice.

*Ford v. Ford*, 371 U.S. 187, 193 (1962). Recognition of the potential conflict between the interests of parents and their children in custody cases has been firmly established in Virginia law and is the basis for the rule that a contractual agreement between parents as to custody is not binding upon our courts. *See Williams v. Woolfolk*, 188 Va. 312, 317, 49 S.E.2d 270, 272 (1948); *Buchanan v. Buchanan*, 170 Va. 458, 477, 197 S.E. 426, 434 (1938); *Gloth v. Gloth*, 154 Va. 511, 551, 153 S.E. 879, 892 (1930).

We are mindful, however, that despite the great need for a circuit court to have the power to appoint a guardian *ad litem* in an appropriate case, "[a] trial court must have a cognizable basis for granting equitable relief. Equity is a complex system of established law and is not merely a reflection of the chancellor's sense of what is just or appropriate." *Tiller v. Owen*, 243 Va. 176, 179, 413 S.E.2d 51, 53

(1992). Accordingly, we must examine the body of Virginia child custody law, including, *inter alia*, the statutory scheme, case law, and developed practices, to ascertain whether the trial court possessed the authority it exercised in this case.[2]

■ "In Virginia, we have established the rule that the welfare of the infant is the primary, paramount, and controlling consideration of the court in all controversies between parents over the custody of their minor children. All other matters are subordinate." *Mullen v. Mullen*, 188 Va. 259, 269, 49 S.E.2d 349, 354 (1948); *accord Sutherland v. Sutherland*, 14 Va. App. 42, 44, 414 S.E.2d 617, 618 (1992); *Brown v. Brown*, 218 Va. 196, 199, 237 S.E.2d 89, 91 (1977). Although technically not a party to the custody proceeding, the child is the subject of the custody hearing. "Such a child is in a very real sense the ward of the court." *Williams*, 188 Va. at 317, 49 S.E.2d at 272; *see also* 42 Am. Jur. 2d *Infants* § 29 (1969).

■ In Virginia, the courts of chancery represent " 'the parental and protecting power of the Commonwealth,' " *Buchanan v. Buchanan*, 174 Va. 255, 273, 6 S.E.2d 612, 619 (1940) (quoting 1 Minor's Institutes 432 (1876)), and absent a specific statute to the contrary, such courts "have succeeded to the powers . . . of the English chancery court." *Massanetta Springs Summer Bible Conference Encampment v. Keezell*, 161 Va. 532, 542, 171 S.E. 511, 514 (1933). "It appears well settled that courts having historic chancery or equity jurisdiction exercise and control the sovereign power called *parens patriae*." *In re Baby M.*, 217 N.J. Super. 313, 324, 525 A.2d 1128, 1133 (1987), *aff'd in part*, 109 N.J. 396, 537 A.2d 1227 (1988); *accord New York Life Ins. Co. v. Bangs*, 103 U.S. 435, 438 (1880). This power is separate and distinct from the purely statutory power that a circuit court may exercise in a divorce proceeding. *See Lapidus v. Lapidus*, 226 Va. 575, 578, 311 S.E.2d 786, 788 (1984).

■ The common law doctrine of parens patriae is defined as that power of the Commonwealth to watch over the interests of those who are incapable of protecting themselves. *State v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1089 (2d Cir.), *cert. denied*, 404 U.S. 871 (1971). In child custody cases, the equitable nature of this doctrine focuses the

---

[2] The propriety of relying on established practices is recognized by Rule 2:19 of the Rules of the Supreme Court of Virginia, which provides: "In matters not covered by these Rules the established practice and procedure in equity is continued."

power of the court on the best interests of the child.[3] "In all suits or legal proceedings, of whatever nature, in which the . . . rights of a minor are involved, the protective powers of a court of chancery may be invoked whenever it becomes necessary to fully protect such rights." *Stewart v. Superior Court*, 163 Ariz. 227, 230, 787 P.2d 126, 129 (1989). This protective power, which is unique to those cases dealing with the rights and interests of children, includes the long established practice of appointing a guardian *ad litem* to protect the best interests of a child upon the chancellor's determination that such appointment is necessary. "We find that the rules and statutes that presently express the court's authority to appoint guardians ad litem are not exclusive sources of that power. Rather they are non-exclusive codifications of an equitable power and responsibility dating back to chancery days." *Id.*

Code § 8.01-9 does not expressly prohibit a circuit court conducting such a proceeding from appointing a guardian *ad litem*, nor does it encompass the entire subject of the court's discretionary power. Accordingly, any statutory change to the court's common law discretionary protective power " 'is limited to that which is expressly stated or necessarily implied because the presumption is that no change was intended.' " *Bowman v. Commonwealth*, 11 Va. App. 259, 264, 397 S.E.2d 886, 889 (1990) (quoting *Boyd v. Commonwealth*, 236 Va. 346, 349, 374 S.E.2d 301, 302 (1988)).

The General Assembly has recognized in a myriad of situations the need for a representative to protect the interests of a child when a parent's interests or needs may be inconsistent. *See, e.g.*, Code § 20-49.2 (in paternity suit where minor child is made a party, the child "shall be represented by a guardian ad litem appointed by the court . . . [and][t]he child's mother or father may not represent the child as guardian or otherwise"); Code § 16.1-266(A) (requiring the juvenile and domestic relations district court to appoint a guardian *ad litem* to represent a child who is the subject of an abuse or neglect hearing, the subject of an entrustment agreement or a petition terminating residual parental rights); Code § 16.1-266(D) (granting the juvenile and domestic relations district court discretion to appoint a guardian *ad litem* for the child in contested custody cases, with the proviso that, if both

---

[3] Lord Mansfield first articulated "the best interests of the child" standard in *Blisset's Case*, 98 Eng. Rep. 899 (K.B. 1774).

sides are represented by counsel, the court must first make a determination that the best interests of the child are not otherwise adequately represented).

Code § 16.1-266 ''recognizes that the substantive rights and interests of the child are often separate and distinct from those of the other parties to the litigation . . . [and] that these rights and interests are best protected by an independent party.'' *Stanley v. Fairfax County Dep't of Social Servs.*, 10 Va. App. 596, 601, 395 S.E.2d 199, 202 (1990), *aff'd*, 242 Va. 60, 405 S.E.2d 621 (1991). Although this provision is not applicable to a custody hearing that is ancillary to a divorce suit in circuit court, the same underlying concerns addressed by the legislature in this provision are present in the circuit court proceeding.

Code § 31-15 provides the circuit court and juvenile and domestic relations district court with concurrent jurisdiction over custody disputes when the parents of the child are separated, but not divorced. In the case at bar, the husband concedes that if this case had been brought in the juvenile and domestic relations district court and a judge of that court found that it was in the child's best interests to appoint a guardian *ad litem*, he or she would have the specific authority to do so under Code § 16.1-266(D). Husband argues, however, that the identical case filed in circuit court requires that the child's need for a guardian *ad litem* go unmet, because no specific statute authorizes such appointment. We find this construction contrary to the entire body of Virginia child custody law.

██ ''The strong public policy of this Commonwealth posits that the paramount concern where children are concerned are their best interests.'' *Commonwealth ex rel. Gray v. Johnson*, 7 Va. App. 614, 623, 376 S.E.2d 787, 792 (1989). In *Gray*, we noted that, within the context of a paternity and support suit:

The courts of the Commonwealth have a long history of protecting the interests of minor children and have expressed that careful concern by ensuring that the rights and interests of the minors are safeguarded. Code §§ 8.01-9 and 16.1-266 require that guardians *ad litem* or counsel be appointed to represent a child's interests when the child is involved in court proceedings. Our Supreme Court has consistently held that a guardian *ad litem* must be appointed when the interests of infants are involved, *see, e.g., Moses v. Akers*, 203 Va. 130, 131-32, 122 S.E.2d 864, 865 (1961); *Kanter v. Holland*, 154 Va. 120, 122, 152 S.E. 328, 329

(1930), and unless the record affirmatively shows that a guardian *ad litem* has been appointed, the judgment is void.

*Id.* at 623-24, 376 S.E.2d at 792.

In *Kern v. Lindsey*, a divorce case, our Supreme Court stated that "[t]o protect the interests of the child the court appointed a guardian *ad litem* who filed an answer and attended the subsequent proceedings." 182 Va. at 779, 30 S.E.2d at 708. The Supreme Court implicitly recognized this procedure and relied on the report and recommendation of the guardian *ad litem*, noting: "The report of the guardian *ad litem* shows that the appellee's household consists of his mother, a sister and her husband and their two children, where the atmosphere is good and wholesome." *Id.* at 784, 30 S.E.2d at 710. In addition, the Court noted that the trial court "reached the conclusion, concurred in by the guardian *ad litem*, that it will be [in] the best interest of the boy that he be allowed to visit his father." *Id.*

"In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." *Farley v. Farley*, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990); *see also* Code § 20-107.2. The *Kern* decision implicitly acknowledges the discretionary power of the court, in an appropriate case, to appoint a guardian *ad litem* to protect the best interests of a child in a contested custody hearing. *See also Jones v. Robinson*, 229 Va. 276, 288, 329 S.E.2d 794, 802 (1985) (absent a valid statute circuit courts may act under their general equity powers); *Smith v. Smith*, 200 Va. 77, 86, 104 S.E.2d 17, 24 (1958) (chancery courts may exercise their general equity jurisdiction); *Buchanan*, 174 Va. at 277, 6 S.E.2d at 621 ("Courts of equity, having once acquired jurisdiction, never lose it . . . unless [a] statute . . . use[s] prohibitory or restrictive words" (citation omitted)).[4] Thus, circuit courts conducting a custody hearing ancillary to a divorce proceeding are not

---

[4]  Many other states provide for the appointment of *guardians ad litem* to represent the child in marital dissolution cases where custody is contested.

There are provisions in a number of state laws for investigations and reports to the court, as well as for interviews of the child by the court in chambers. Examples of state statutory authority for the appointment of guardians *ad litem* are found in Alaska, Arizona, California, Colorado, Connecticut, Illinois, Maine, Massachusetts, Michigan (friend of the court), Montana, Mississippi, Nebraska, New Hampshire, New Mexico, Ohio, Oregon, Rhode Island, Utah, Vermont, Washington, and Wisconsin. In addition, case law in several states has held that the court has inherent power to make such appointments.

constrained by the absence of a specific provision within Code § 8.01-9 providing for appointment of a guardian *ad litem*. Accordingly, we hold that in those contested custody cases where the trial judge finds that the best interests of the child are not adequately protected by the parties, appointment of a guardian *ad litem* for the child is appropriate.

Indivisible from the power of appointment is the associated power equitably to apportion the fees and expenses of the guardian *ad litem* as costs to the parties. Code §§ 20-79(b) and 20-99(5) provide the statutory basis for the award of such costs as equity and justice may require. Such an award is considered remedial and is within the recognized "discretion of a court of equity over the subject of costs." Code § 14.1-177.

For the reasons stated above, we hold that the trial court possessed the authority to appoint a guardian *ad litem* where such appointment was found necessary to protect the interests of the minor child of the parties. While such an appointment is not required in every contested custody case, a finding that the appointment of a guardian *ad litem* is necessary and would be in the child's best interest is an essential prerequisite. Our holding is consistent with the broad discretion granted to circuit courts in providing for the welfare and support of children during and following a divorce proceeding. *See* Code §§ 20-103 and 20-107. Because no evidence indicates that the trial court abused its discretion in the exercise of its authority or in the equitable apportionment of the associated costs, we affirm the judgment.

*Affirmed.*

Benton, J., and Bray, J., concurred.

Freed & Walker, *Family Law in the Fifty States: An Overview*, XXI Fam. L.Q. 417, 521 (1988); *accord McDonald v. McGowan*, 163 Ill. App. 3d 697, 700, 516 N.E.2d 934, 936 (1987) (because of potential conflict of interest between parents and child in visitation dispute, guardian *ad litem* appointed for child); *Levitt v. Levitt*, 79 Md. App. 394, 404-05, 556 A.2d 1162, 1167 (lawyer appointed for five-year-old child subjected to protracted custody dispute), *cert. denied*, 316 Md. 549, 560 A.2d 1118 (1989).